**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 11-CR-86-JHP |
| | ) | |
| DEANTA MARQUIS LONG, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Before the Court is Defendant Deanta Marquis Long's ("Long" or "Defendant") Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. No. 189). The United States of America ("Government") filed a Response in opposition to Long's Motion (Doc. No. 192). Long filed a Reply brief (Doc. No. 194), followed by a Motion to Amend or Supplement his Reply brief (Doc. No. 195). For the reasons cited herein, Long's Motion pursuant to § 2255 is **DENIED**. Long's request to amend or supplement his Reply brief is **GRANTED**.

## BACKGROUND

In April of 2011, Tulsa Police executed two search warrants on apartments associated with Long. (*See* Doc. No. 80). On June 6, 2011, a federal Grand Jury indicted Long on four counts: (1) being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count One); (2)

1

attempt to manufacture 28 grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii) (Count Two); possession of cocaine with intent to manufacture cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Count Three); and (4) possession of firearms in furtherance of drug trafficking crimes in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Four).  (Doc. No. 2 (Indictment)).  Assistant Federal Public Defender Selim Fiagome was initially appointed to represent Long in the district court proceedings.  On July 26, 2011, Long entered a guilty plea as to Counts Three and Four, with the remaining counts to be dismissed at sentencing.  (Doc. No. 13 (Minute Sheet – Change of Plea)).  Long and his counsel then requested a substitute attorney, and the Court appointed CJA panel attorney James Fatigante to represent Long.  (Doc. No. 24). Long then sought to withdraw his guilty plea, which the Court initially denied but later permitted.  (*See* Doc. No. 72).

Long's counsel then filed a Motion to Compel the Government to produce the name of the Reliable Confidential Informant ("RCI") as alleged in the two affidavits for search warrant, based on Long's allegations that either the RCI did not exist or that the affidavits described someone other than Long.  (*See* Doc. No. 76 (Defendant's Motion to Compel Discovery)).  The first of the two affidavits for search warrant stated that the RCI had been used by the affiant and other officers on more than three occasions dating back to 1996.  (Doc. No. 81, Ex. 1 (Affidavit

for Search Warrant)).  The affidavit stated that the RCI had made contact with a black male who was selling cocaine, that the RCI had been in an apartment and had seen cocaine packaged for distribution, and that the RCI had pointed out the black male's vehicle.  (*Id.*).  The second affidavit repeated the same statements and added that the RCI had told the affiant he had seen the same black male with cocaine inside another residence within the last three weeks.  (*Id.*).  In his Motion to Compel Discovery, Long argued the RCI's identity was relevant to the issue of suppression of evidence gathered pursuant to the search warrants.

The Court referred Long's Motion to Compel Discovery to Magistrate Judge T. Lane Wilson, who held a hearing on the motion and ordered an *in camera* review of the documentation related to the Tulsa Police Department's use of the RCI.  (Doc. No. 83).  After reviewing those documents, the Magistrate Judge ordered the Government to produce the RCI at an *ex parte, in camera* hearing.  (Doc. No. 86).  Long's counsel was permitted to submit suggested questions for the Court to ask of the RCI.  On December 19, 2012, the Magistrate Judge held the *ex parte, in camera* hearing and questioned the RCI.  (Doc. No. 88).  At the hearing, the Magistrate Judge asked "virtually all of the questions suggested by defendant's counsel," and the RCI "provided no information that would assist defendant in this case."  (Doc. No. 90 (Order), at 7).  To the contrary, the Magistrate Judge concluded the RCI "would clearly be helpful to the

Government." (*Id.* at 7-8). The Magistrate Judge was "convinced that the [RCI] knows defendant well enough to identify him, was inside both the apartment and defendant's residence, and can identify defendant's vehicle. Thus, defendant will not benefit, in any way, from a disclosure of the [RCI's] identity." (*Id.* at 8). Therefore, the Magistrate Judge concluded that disclosure of the RCI's identity was not warranted, and the Magistrate Judge denied Long's Motion to Compel Discovery. (*Id.* at 8-9).

Next, Long's counsel filed a Motion to Suppress Evidence seized or obtained as a result of the two warrants authorizing the residence searches. (Doc. No. 93). Long argued all the information in the affidavits in regard to the RCI allegations was fabricated by the affiant to create probable cause, and the affidavits otherwise lacked sufficient information to determine probable cause. Long's counsel simultaneously filed a motion for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), to determine whether the affidavit lacked the necessary probable cause (Doc. No. 92). Long's counsel also moved to dismiss the counts against Long (Doc. Nos. 94, 95). Magistrate Judge Wilson issued a Report and Recommendation recommending that Long's motions all be denied. (Doc. No. 109). Long's counsel timely filed objections to the Report and Recommendation, and this Court affirmed and adopted the Report and Recommendation on March 12, 2013. (Doc. No. 116).

Long went to trial, and the RCI did not testify. (*See* Doc. Nos. 164, 165, 166 (Trial Tr.)). Long represented himself at trial, with Mr. Fatigante acting as stand-by counsel. The Government presented evidence from the officers who were present when the first search warrant was executed, including testimony that Long answered the door to the officers while holding a jar of cocaine, that Long attempted to slam the door on the officers, and that Long attempted to run from the officers but fell in the kitchen and dropped the jar, scattering cocaine across the floor. The officers testified to finding firearms, ammunition, baggies of cocaine, and items used for manufacturing crack cocaine. They testified that three other men were present in the kitchen. The officers further testified that, upon execution of the second search warrant at Long's residence, they found a large amount of cash, ammunition, drug distribution baggies, and a small amount of marijuana. Long did not testify. The jury found Long guilty on Counts One to Four. (*See* Doc. No. 138 (Minute Sheet – Criminal Trial)). Long then moved for a new trial, which the Court denied. (Doc. No. 150). On June 26, 2013, this Court sentenced Long to 211 months of imprisonment. (*See* Doc. No. 152 (Minute Sheet – Sentencing)).

Long filed a direct appeal challenging the denial of his Motion to Compel Discovery, his Motion to Suppress, and his Motion for a *Franks* Hearing. CJA panel attorney J. Lance Hopkins was appointed as appellate counsel. (Doc. No.

175).  The Tenth Circuit affirmed Long's conviction.  *United States v. Long*, 774 F.3d 653 (10th Cir. 2014).  The Circuit Court rejected Long's challenge to the first search warrant affidavit.  First, the Circuit Court concluded the RCI's identification of a "Black male" was sufficient to search the premises where the RCI had recently seen cocaine packaged for distribution, and no further description of the individual was required.  *Id.* at 659-60.  Second, the Circuit Court held the RCI's statement that he had recently observed cocaine packaged for distribution at the premises to be searched was sufficiently corroborated "by the affiant's assertions of the [RCI's] prior accuracy in reporting on cocaine offenses and the [RCI's] expertise on cocaine trafficking."  *Id.* at 660.  The Circuit Court further agreed with this Court that Long had not made an adequate evidentiary showing to receive a *Franks* hearing, because his *Franks* motion consisted "solely of speculation that if the affidavit were true, the police would have conducted further investigation (such as a controlled buy) and included more information in the affidavit, even though additional investigation and more detail in the affidavit were not necessary for a lawful search."  *Id.* at 662.  The Tenth Circuit stressed that the Magistrate Judge had interviewed the RCI under oath at an *ex parte, in camera* hearing and had concluded that the RCI did exist, that the RCI had knowledge of Long and his drug activity, and that the RCI had provided the relevant information to the affiant.  *Id.* at 663.

The Tenth Circuit further affirmed this Court's denial of disclosure of the RCI's identity. The Circuit Court concluded it was irrelevant whether Long was the "Black male" identified in the affidavit, because there was "no dispute that Defendant was the person who answered the door at the first location searched and was closely connected to the cocaine powder found there." *Id.* at 663. The Circuit Court again emphasized the Magistrate Judge's questioning of the RCI under oath, after which the Magistrate Judge stated the RCI provided no information that would assist Long in his case. *Id.* at 664. The Circuit Court stated the *in camera* hearing was the appropriate procedural vehicle for determining whether the RCI's testimony would have aided Long's defense. *Id.*[1]

Long filed a petition for a writ of certiorari, which the United States Supreme Court denied on May 4, 2015. (Doc. No. 185). On August 31, 2015, Long received a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2), and his previously imposed sentence was reduced to 190 months. (Doc. No. 187).

Long has now filed a motion pursuant to 28 U.S.C. § 2255 to vacate his conviction on four grounds of ineffective assistance of counsel. (Doc. No. 189). Long argues his counsel rendered ineffective assistance by "failing to 'properly' object to and appeal" (1) Long's absence during the Magistrate Judge's *in camera,*

---

[1] The Tenth Circuit also affirmed the district court's admission into evidence a CD found in the apartment where Long was arrested, which was titled "Cokeland" by "Francis H. Whyte" and had a picture of Long on the cover. Long does not raise the issue of the CD's admission in this § 2255 motion.

*ex parte* interview of the RCI and the RCI's absence at trial; (2) the alleged fabrication of evidence by the affiant and prosecutor; (3) Long's right to test the veracity of the search warrant affidavit; and (4) this Court's decision to allow Long to represent himself at trial.  (*Id.*).  The Court ordered the Government to respond to Long's § 2255 motion.  (Doc. No. 190).  The Government filed its Response in Opposition to Long's § 2255 motion (Doc. No. 192), and Long filed a Reply (Doc. No. 194).  Long subsequently filed a "Motion to Amend or Supplement the Pleading" (Doc. No. 195), in which he seeks to supplement his Reply brief with respect to Ground Two.

## DISCUSSION

## I.  Applicable Legal Standards

In evaluating Long's claims of ineffective assistance of counsel, this Court is guided by the familiar holding of *Strickland v. Washington*, 466 U.S. 668, 687 (1984), which sets out the two elements necessary to demonstrate that an attorney's performance constituted ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or . . . sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Evaluation of an ineffective assistance claim is a fact-intensive inquiry, requiring a court to determine "whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688. As the Supreme Court explained in *Strickland*, "representation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another." *Id.* at 693. As such, great deference is granted to defense counsel's reasoned choice of action:

> It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Id.* at 689 (quotation omitted). *See also Boyd v. Ward*, 179 F.3d 904, 915 (10th Cir. 1999) ("[T]hose accused of crimes, even capital crimes, are entitled only to a reasonable and adequate defense, not the defense which, in hindsight, they believe would have been the best."). Further, a court considering a claim of ineffective assistance of counsel for failure to raise an issue is required to look to the merits of the omitted issue. "If the omitted issue is without merit, counsel's failure to raise it

does not constitute constitutionally ineffective assistance of counsel." *Hooks v. Ward,* 184 F.3d 1206, 1221 (10th Cir. 1999) (quotation omitted).

Long also bears the heavy burden of proving that the claimed errors actually had an adverse effect on his defense. Given "the presumption that a criminal judgment is final is at its strongest in collateral attacks on that judgment," Long must show more than "that the errors had some conceivable effect on the outcome of the proceeding [as] [v]irtually every act or omission would meet that test." *Strickland*, 466 U.S. at 693, 697. Rather, Long is required to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Because Long "must demonstrate both *Strickland* prongs to establish his claim, a failure to prove either one is dispositive." *United States v. Orange*, 447 F.3d 792, 796-97 (10th Cir. 2006) (internal citations omitted).

## II. Ground One: Right to be Present at the *In Camera* Hearing and to Confront the RCI at Trial

In Ground One of his § 2255 motion, Long argues his trial and appellate counsel were ineffective for failure to "properly" object to and appeal (1) the decision of the Magistrate Judge to hold an *ex parte, in camera* hearing to interview the RCI without the presence of Long or his counsel and (2) the decision of this Court not to require the RCI to appear at trial for cross-examination and

impeachment. Long argues these rulings denied him his Sixth Amendment right to confront the witnesses against him and his Fifth Amendment right to due process. Long argues confrontation of the RCI was necessary to ensure fair trial proceedings, because the RCI allegations in the affidavits were fabricated by the affiant to create probable cause where none existed.

Ground One is subject to denial. First, Long's argument that he had a right to be present at the Magistrate Judge's *in camera* interview of the RCI is without merit, and therefore his attorneys' performance was not deficient for any failure to "properly" raise it. The Tenth Circuit has consistently held that the *in camera* procedure does not violate the defendant's Sixth Amendment rights where the defendant "sought disclosure for purposes of challenging the informant's reliability and the existence of probable cause, and where the trial court in its discretion held the *in camera* hearing and determined that disclosure was not necessary for this purpose." *Sandoval v. Aaron*, 562 F.2d 13, 14-15 (10th Cir. 1977). Here, the Magistrate Judge conducted the *in camera* interview and determined disclosure of the RCI was not required, because disclosure was not in the public interest and could not assist in Long's defense. (Doc. No. 90). Because Long had no Sixth Amendment right to be present at the *in camera* hearing, his attorneys' performance could not be deficient for failing to assert such a right or appeal the

denial of Long's exclusion, and Long suffered no prejudice from any failure to assert such a right.

Second, Long's argument that he had a right to confront the RCI at trial is also meritless. Long had no right to confront the RCI at trial, because the RCI's role was only as a tipster who provided probable cause for a search warrant, not as a witness or participant to the charged crimes. *See United States v. Moralez*, 908 F.2d 565, 567 (10th Cir. 1990) ("Disclosure of an informant is not required . . . where the informant is not a participant in or a witness to the crime charged."). Again, Long's counsel could not be deficient for failure to assert such a right or appeal the denial under these circumstances, and Long suffered no prejudice from his counsel's failure to assert that right. Because Long fails to meet either prong of the *Strickland* test, Ground One is denied.

## III.    Ground Two:  Fraud on the Court

In Ground Two, Long argues his trial and appellate counsel failed to properly raise "fraud on the court" committed by the Government's prosecutor and the officer who prepared the affidavit for search warrant, Officer David Brice. (Doc. No. 189, at 5). Long asserts Officer Brice and the prosecutor fabricated evidence by coaching the RCI into identifying Long as the "John Doe" Black male listed in the search warrant affidavits. After filing his Reply brief, Long filed a "Motion to Amend or Supplement the Pleading" (Doc. No. 195), in which he

repeats his arguments raised in Ground Two and argues that the Government conceded the merits of this issue because it failed to object specifically to this argument. The Court grants Long's motion to amend or supplement the Reply but finds that the Government did not concede this issue.

Here, Long offers only unsupported conjecture to support his argument that "fraud on the court" occurred with respect to the RCI in this case. Long's argument rests on prior high-profile investigations into unrelated, falsified search warrants in a number of Tulsa criminal cases. Based on this history and the RCI's "completely unreasonable" identification of Long, Long postulates that Officer Brice and the prosecutor must have colluded to fabricate evidence in this case by "coaching/coercing" the RCI into lying under oath and identifying Long as the Black male in the affidavit. (Doc. No. 189, at 25). However, Long has absolutely no evidence to suggest any such fabrication of evidence occurred in this case. Further, the matter of the RCI's identification of Long was investigated at the Magistrate Judge's *in camera* hearing, and the Magistrate Judge was satisfied that the RCI had knowledge of Long and his drug activity and that the RCI provided the relevant information to the officers who later applied for the search warrants. (*See* Doc. Nos. 90, 109). The Magistrate Judge also noted that the RCI "did not discuss her or his testimony with anyone involved in the prosecution of this case prior to the [in camera] hearing." (Doc. No. 90, at 8).

Because Long has no foundation for his assertion that a "fraud on the court" occurred, his attorneys' performance was not deficient for failing to assert such fraud occurred or appeal this issue, and Long suffered no prejudice from any failure to make such a meritless assertion. *See Hooks*, 184 F.3d at 1221. In addition, the Court disagrees with Long's assertion that the Government conceded the issue of "fraud on the court," because the Government does object to Long's argument that the Government and the affiant fabricated evidence pertaining to the search warrant affidavit. (*See, e.g.*, Doc. No. 192 (Response), at 7 ("Accordingly, the absence from the affidavit of the RCI's specific description of Long's appearance does not, as Long contends, suggest . . . that the government and the affiant colluded to coach or coerce an informant into identifying Long at the in camera hearing.); *id.* at 8 ("In Grounds Two and Three of his motion, Long again repeats his claims that counsel for the government and the affiant fabricated evidence about the RCI. As set forth above, these allegations have been raised and rejected by multiple courts, and Long is procedurally barred from raising them in this § 2255 motion.")). Because Long fails to meet either prong of the *Strickland* test, Ground Two is denied.

## IV. Ground Three: Challenge to the Veracity of the Search Warrant Affidavit

In Ground Three, Long argues his counsel was ineffective for failing to "properly" raise Long's right to test the veracity of Officer Brice's search warrant

affidavit pursuant to *Franks*.  Long asserts that the RCI allegations were fabricated, as were Officer Brice's statements in the affidavits regarding pre-warrant surveillance.

As a threshold matter, Long fails to detail any act or omission by counsel in connection with his Motion for a *Franks* Hearing (Doc. No. 92) or Motion to Suppress Evidence (Doc. No. 93) that constitutes deficient performance.  To the contrary, the record shows that Long's trial and appellate counsel zealously pursued both the Motion to Suppress and the Motion for a *Franks* Hearing, and they raised them on appeal.  Trial counsel raised the precise arguments Long now makes regarding the alleged fabrication of statements in the affidavits.  (*See* Doc. Nos. 92, 93).  Appellate counsel also challenged the district court's denial of the Motion to Suppress and the Motion for a *Franks* Hearing, arguing the affidavits were deficient.  (*See* Appellant Br., Case. No. 13-5082 (10th Cir.)).  Counsel's performance is not rendered deficient simply because those arguments were not successful.  *See Strickland*, 466 U.S. at 689.

In any event, Long makes no showing that his attorneys' allegedly deficient performance prejudiced him.  First, in rejecting Long's argument that the RCI misidentified him, the Tenth Circuit held that it was "utter speculation—and worse, irrelevant—that he may not have been the 'Black male' mentioned in the affidavit."  774 F.3d at 663.  The Tenth Circuit noted there was "no dispute that

Defendant was the person who answered the door at the first location searched and was closely connected to the cocaine powder found there." *Id.* Further, "[b]ecause the informant had nothing relevant to say regarding Defendant's guilt of the charged offense, there was no need to question him." *Id.* Moreover, as the Tenth Circuit noted, "the magistrate judge questioned the informant under oath. He determined that the confidential informant provided no information that would assist defendant in this case." *Id.* (quotation omitted). The Tenth Circuit also rejected Long's speculation that the RCI was unreliable based on the RCI's behavior and failure to report Long's distinctive personal features, concluding: "What is notably missing from this argument is any *evidence* that the allegations of the affidavit are false." 774 F.3d at 662. This Court agrees with the Tenth Circuit's conclusion.

Second, Long's assertions that Officer Brice fabricated statements in the affidavits are based on pure conjecture and are defied by Officer Brice's sworn testimony at trial. Long argues Officer Brice could not have conducted the pre-warrant surveillance as stated in the first affidavit, because the relevant police report states he conducted surveillance on the day after the first warrant was issued. However, at trial, Officer Brice testified that he must have been mistaken as to the date when he wrote the report. (*See* Doc. No. 165 (Trial Tr.), at 179:2-5, 180:7-12). Long further argues Officer Brice must have fabricated the RCI

allegations, because Officer Brice omitted from the first affidavit the name of the Black male the RCI had given him. However, Officer Brice testified at trial that, although the RCI had given him the name of "Frank" as the Black male identified in the affidavit, he had omitted the name from the affidavit because he did not know if "Frank" was his real name or a pseudonym. (*See* Doc. No. 165 (Trial Tr.), at 180:17-181:1). Despite Long's arguments to the contrary, Officer Brice's testimony does not indicate that he excluded the name of "Frank" from the affidavit because he doubted the truth of the informant's information, nor does it provide "concrete proof" that Officer Brice lied on the search warrant affidavit or at trial. (*See* Doc. No. 189, at 33). Long offers no evidence, only speculation, to support his argument that Officer Brice fabricated any statements in the affidavit. Accordingly, Long suffered no prejudice from any failure by his attorneys to "properly" raise these unfounded arguments on Long's behalf.

Because Long fails to meet either prong of the *Strickland* test, Ground Three is denied.

## V. Ground Four: Long's Decision to Represent Himself at Trial

In Ground Four, Long asserts his counsel was ineffective for failing to "properly" object to or appeal Long's decision to represent himself at trial. Long argues his Fifth Amendment due process rights and his Sixth Amendment right to counsel were violated when the Court allowed Long to represent himself at trial.

Here, the omitted issue is without merit, because the record shows that Long knowingly and voluntarily proceeded to trial without counsel after the Court conducted a thorough colloquy with Long about self-representation. Therefore, Long's attorneys were not constitutionally ineffective for failure to raise the issue. *See Hooks,* 184 F.3d at 1221.

"A criminal defendant has a constitutional and a statutory right to waive his right to counsel and represent himself at trial." *United States v. Akers*, 215 F.3d 1089, 1096-97 (10th Cir. 2000) (citing *Faretta v. California*, 422 U.S. 806, 807 (1975) and 28 U.S.C. § 1654 (codifying the right of defendants in federal prosecutions to self-representation)). To invoke this right of self-representation, a criminal defendant must satisfy three requirements: (1) "the defendant must clearly and unequivocally assert his intention to represent himself"; (2) "the defendant must knowingly and intelligently relinquish the benefits of representation by counsel"; and (3) "the defendant must make this assertion in a timely fashion." *Id.* at 1097 (internal quotations omitted). The trial judge must ensure the waiver of counsel is made "knowingly and intelligently." *United States v. Turner*, 287 F.3d 980, 983 (10th Cir. 2002) (citing *United States v. Padilla*, 819 F.2d 956-57 (10th Cir. 1987)). Although "there is no precise litany of questions that must be asked of defendants who choose self-representation," the trial judge should ideally conduct "a thorough and comprehensive formal inquiry including

topics such as the nature of the charges, the range of punishment, possible defenses, and a disclosure of risks involved in representing oneself *pro se*." *Id.* (quotations and alterations omitted).

Each of these requirements was satisfied in this case. At trial, this Court conducted a thorough and comprehensive colloquy with Long about representing himself. (*See* Doc. No. 164 (Trial Tr.), at 4-13). The Court asked Long about his desire to represent himself, his understanding of the charges against him, the possible range of punishment, possible defenses, and his qualifications for representing himself. The Court advised Long about his right to counsel, and the Court warned Long about the perils of self-representation, analogizing self-representation to "wanting to turn this rocket ship over to someone who's never flown a rocket ship, and hopefully get you to the moon" and to "taking out your own appendix and not having a clue about how to sew it back up." (*Id.* at 9:20-12:21). Following this exchange, the Court asked Long whether he wanted additional time to speak with counsel, but Long insisted on self-representation: "I made my mind up already. I want to go forward with this. And I – I made my mind up. I wasn't coerced into none of this. I want to do this." (*Id.* at 13:20-22). The Court then spoke with Mr. Fatigante about the discussions and preparations he had had with Long regarding Long's self-representation. (*Id.* at 13-16). Mr. Fatigante stated he too had expressed his concerns to Long about representing

himself.  (*Id.* at 14).  Following this discussion, the Court asked Long whether he had any comment, to which Long replied:

> Yeah, actually I do.  I – I'm ready for this, Your Honor.  I prepared for this.  I know I haven't done this before, and this is kind of irregular, but I'm standing on the truth and that's all I need to know.  And as far as going forward, I'm not nervous – well, I'm nervous about it.  I'm nervous about it, but I'm not scared, and I'm ready to take the consequences if this ship crashes.  But I want to be behind the wheel of this ship if it goes to the moon, and behind the wheel if it crashes.

(*Id.* at 16:17-25).  Following these representations, the Court ruled that it would allow Long to represent himself, reserving the right to withdraw that permission if Long did not follow the directions and rules of the Court.  (*Id.* at 59).  The Court designated Mr. Fatigante as stand-by counsel and noted that Mr. Fatigante would step in as lead counsel if Long changed his mind regarding representation during the trial.  (*Id.* at 61).

The Court's inquiry and admonitions thoroughly satisfied the requirements for self-representation at trial.  "A lawyer cannot be forced upon a defendant who wishes to waive his right to counsel even if self-representation would be detrimental."  *Turner*, 287 F.3d at 983 (citing *Faretta*, 422 U.S. at 834).  Long argues the Court "had a clear understanding that [Long] lacked the qualifications and mental capacity for self-representation" at trial, pointing to his lack of understanding of "Affirmative Defenses" and a lack of "basic understanding of law" and the jury trial process  (Doc. No. 189, at 36-37).  However, "a defendant's

technical legal knowledge is not relevant to an assessment of his knowing exercise of the right to waive counsel." *Turner*, 287 F.3d at 983 (citing *Faretta*, 422 U.S. at 836). Moreover, "a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation." *Faretta*, 422 U.S. at 835. Contrary to Long's argument, this Court strongly advised Long against representing himself, explained the complex nature of a jury trial, and warned of the disadvantage Long would suffer at trial if he chose to represent himself. In other words, the Court's admonitions regarding the dangers and disadvantages of self-representation established that Long's choice was made "with eyes open." *Id.* Accordingly, the Court correctly found that the requirements for self-representation were satisfied.

Long further argues that Mr. Fatigante knew Long had been diagnosed as bipolar and borderline schizophrenic and was not taking his medication, which meant Long was incapable of representing himself at trial. However, as the Supreme Court has explained, "while it is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts, a criminal defendant's ability to represent himself has no bearing upon his competence to *choose* self-representation." *Godinez v. Moran*, 509 U.S. 389, 400 (1993) (quotations and alterations omitted). Long provides no

grounds to indicate he was incompetent to choose self-representation, even if he suffered from certain mental conditions that could be alleviated by medication.

Finally, in his Reply brief Long asserts his motion for self-representation was not "timely," because it was filed the day before trial and granted "hours later." (Doc. No. 194, at 8). However, the timeliness requirement is intended as a means of avoiding undue delay in the trial proceedings, not as a separate safeguard for the defendant. *See United States v. Tucker*, 451 F.3d 1176, 1180 (10th Cir. 2006) (noting a timely request for self-representation must be "timely and not for the purpose of delay."). To the contrary, the Court was bound to honor Long's request for self-representation, made prior to trial, to protect Long's right to represent himself at trial. *See United States v. Beers*, 189 F.3d 1297, 1303 (10th Cir. 1999) (noting that the right to self-representation is "unqualified" if unequivocally "demanded *before* trial.") (quotation omitted).

Long made a knowing and voluntary decision to represent himself at trial, despite the warnings of this Court and Mr. Fatigante. Although a defendant "may conduct his own defense ultimately to his own detriment, his choice must be honored." *Faretta*, 422 U.S. at 834. Therefore, counsel's failure to "properly" object to or appeal Long's decision to represent himself was not deficient performance. Because Long fails to meet this prong of the *Strickland* test, Ground Four is denied.

## EVIDENTIARY HEARING

This Court is required by § 2255 to hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. *See also United States v. Marr*, 856 F.2d 1471, 1472 (10th Cir. 1988). With this standard as a guide, the Court has thoroughly reviewed the pleadings, files, and record in this case, and from that review, the Court finds the record conclusively shows that Long is entitled to no relief on his claims and an evidentiary hearing is unnecessary.

## CERTIFICATE OF APPEALABILITY

Rule 11 of the Rules Governing Section 2255 Proceedings instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicate[s] which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). After considering the record in this case, the Court concludes a certificate of appealability should not issue, as Long has not

made a substantial showing of the denial of a constitutional right. The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently.

**CONCLUSION**

For the reasons cited herein, Defendant Deanta Marquis Long's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. No. 189) is **DENIED**. Long's Motion to Amend or Supplement the Pleading (Doc. No. 195) is **GRANTED**.

**IT IS SO ORDERED** this 8th day of August, 2017.

James H. Payne
United States District Judge
Northern District of Oklahoma